**In re the Marriage of Robert F. O'DONNELL, petitioner, Appellant,**

v.

**Janice K. O'DONNELL, Respondent.**

**No. C5–87–96.**

Court of Appeals of Minnesota.

Sept. 22, 1987.

Hugh T. Nierengarten, Nierengarten & Hippert, Ltd., New Ulm, for appellant.

LaMar Piper, Piper & Shea, St. James, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and LOMMEN,* JJ.

## OPINION

LESLIE, Judge.

In this action for dissolution of marriage, appellant Robert O'Donnell disputes the trial court's award of permanent maintenance, the amount of maintenance, debt allocation, and failure to award child support. Respondent Janice O'Donnell filed a notice of review, alleging error in the failure to secure the maintenance award by naming her as beneficiary on appellant's life insurance policies, the denial of attorney fees, and the sufficiency of evidence to support the trial court's findings on expenses, debts, income, and tax attributes. We affirm, but modify the trial court's determination on the allocation of debts and security for the maintenance award.

## FACTS

The 22–year marriage of appellant Robert O'Donnell and respondent Janice O'Donnell was dissolved by judgment in December 1986. The parties stipulated that appellant would have custody of their 16–year old child. The trial court "specifically reserved" the issue of child support for "future determination, the Court having determined that respondent's current earning potential and the maintenance awarded hereunder is sufficient only to maintain respondent's standard of living as established during the marriage."

The parties owned assets valued at $24,022.85, consisting solely of personal property. The trial court distributed the property in accordance with a division proposed by appellant, under which respondent received property valued at $5500 and appellant received property valued at $18,522.85. The court found that the property division "is by agreement of the parties and deemed by them to be of approximately equal value."

The parties also had debts totaling $78,705.69, for a negative net worth of $54,682.84. The trial court found the "debt was sustained principally from a farm real estate investment in the State of Iowa which became a bad investment due to the current farm economy and poor management of the farming operation." The debts included $9500 owed to Janice O'Donnell's parents. The parties had borrowed the $9500 to purchase the Iowa farm on a contract for deed. At the time of the dissolution proceedings, the contract for deed had been cancelled and the parties had lost their investment and interest in the farm.

Appellant proposed that he repay all of the debts except the $9500 owed to respondent's parents. The court found, however, that respondent "is reasonably capable of repaying none of the debt under present circumstances," and it ordered appellant to pay all of the debts. The court found that appellant "is reasonably capable of repaying all of the debts of the parties * * * and should be required to do so since the bulk comes from a bad farm investment." At the same time, the court noted that "the loss of said farm has resulted in tax losses which are an asset of the marriage," and it therefore granted appellant the right "to

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

claim for his own benefit any and all tax consequences which arise in any way from the ownership or forfeiture" of the Iowa farm property.

Appellant has been employed as the president of two state banks since January 1983, and has a net monthly income from his employment of $2279.70. The court found appellant and the minor child have reasonable monthly expenses of $2205.17.

Throughout the marriage, respondent worked only occasionally, at temporary jobs. At the time of the dissolution hearing in June 1986, she was employed part-time as a nurses aide, earning $3.65 per hour, with a net monthly income of between $405 and $455. As of August 1986, respondent had voluntarily terminated her employment and had enrolled in a 10-month secretarial course. The court found:

> The purpose of the training is to make herself more capable of contributing to her support and to a lifestyle comparable to that which she would have enjoyed had the marriage continued. She is in need of permanent maintenance during such period of time as is necessary to assess her ability to rehabilitate herself.

The court also found respondent has reasonable monthly expenses of $802. The court awarded $800 per month in permanent maintenance, "to maintain respondent's standard of living established during the marriage and to assist her in any rehabilitation expense." The trial court expressly reserved the right to review the propriety of the maintenance award at the conclusion of two years.

Finally, the court ordered each party to be responsible for payment of their own attorney fees, with the exception of $750 already paid by appellant for respondent's attorney fees.

### ISSUES

1. Is the trial court's division of property within its discretion?

2. Is the trial court's award of permanent maintenance and the amount of maintenance awarded within its discretion?

3. Is the trial court's determination on child support within its discretion?

4. Is the trial court's failure to require that respondent be named as a beneficiary under appellant's life insurance policies within its discretion?

5. Is the trial court's denial of attorney fees within its discretion?

### ANALYSIS

1. The governing statute provides that the trial court's property division shall be "just and equitable." Minn.Stat. 518.58 (1986). The statute further provides that the court shall base its findings on all relevant factors, including:

> the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and income of each party.

*Id.*

Both debts and assets are apportionable under the statute. *Filkins v. Filkins,* 347 N.W.2d 526, 529 (Minn.Ct.App.1984). An "equal division of the wealth accumulated through the joint efforts of the two parties is appropriate when a long-term marriage is dissolved," and that "division includes apportionment of both assets and debts." *Buhr v. Buhr,* 395 N.W.2d 433, 435 (Minn.Ct.App.1986) (citations omitted). Trial court discretion on this issue is based on the principle that courts should be " 'guided by equitable consideration in distributing rights *and liabilities.*' " *Dahlberg v. Dahlberg,* 358 N.W.2d 76, 80 (Minn. Ct.App.1984) (quoting *Kreidler v. Kreidler,* 348 N.W.2d 780, 784 (Minn.Ct.App. 1984)) (emphasis in original).

The trial court's distribution deviates from the division requested by appellant only in its requirement that appellant pay the $9500 owed to respondent's parents. We conclude that because the $9500 debt was incurred for the benefit of the family, because respondent's parents may be hostile creditors as far as appellant is concerned, and because appellant's volun-

tary assumption of the remaining $69,205 in marital debts is a reasonable alternative property division in a difficult case, appellant should not be required to assume responsibility for this debt. *See Wehner v. Wehner,* 374 N.W.2d 569, 571–72 (Minn.Ct. App.1985). We modify the property settlement to require that Janice O'Donnell assume the $9500 debt to her parents.

■ 2. The standard of review of a court's award of maintenance is " 'whether the trial court abused the wide discretion accorded to it.' " *Dahlberg,* 358 N.W.2d at 82 (quoting *Smoot v. Smoot,* 329 N.W.2d 829, 831 (Minn.1983)). "[E]ach case must be determined on its own facts." *Erlandson v. Erlandson,* 318 N.W.2d 36, 39 (Minn.1982). No single factor is dispositive, and "although the statute lists seven factors, the issue is basically the financial needs of [a spouse] and her ability to meet those needs balanced against the financial condition of [the other spouse]." *Id.* at 39–40.

At trial, appellant agreed respondent will need maintenance, and he proposed to pay her maintenance of $400 per month over a three year period. The trial court, however, awarded respondent $800 per month in permanent maintenance. Appellant challenges both the duration and the amount of maintenance.

With respect to the duration of the maintenance award, appellant's claim is premature. Although the trial court characterized its award as one of "permanent" maintenance, it also expressly reserved the right to review the propriety of the maintenance award at the conclusion of two years. *See Meyer v. Meyer,* 375 N.W.2d 820, 827 (Minn.Ct.App.1985) (where trial court awarded maintenance for five years, appellant's claim that it was error not to award permanent maintenance was premature, because trial court specifically retained jurisdiction to revise, if necessary, the amount and duration of the maintenance), *pet. for rev. denied* (Minn. Dec. 30, 1985).

With respect to the amount of maintenance, appellant observes that his income is sufficient to meet the reasonable needs of himself and the parties' minor child, with only $74 remaining each month. However, appellant has secure employment as president of two state banks, while respondent has no income and minimal employment opportunities. The trial court's award reflects an appropriate balancing of appellant's financial condition against respondent's needs and her ability to meet those needs while she is training to enter the job market, and its determination on this issue is affirmed.

■ 3. Appellant also disputes the court's decision to reserve the issue of child support, arguing that the child support statute provides that the court "shall order child support in accordance with the guidelines." Minn.Stat. § 518.551, subd. 5(a) (1986). The trial court found:

That the issue of child support is specifically reserved by the Court for future determination, the Court having determined that respondent's current earning potential and the maintenance awarded hereunder is sufficient only to maintain respondent's standard of living as established during the marriage.

The trial court's determination constitutes a deviation from the guidelines. *See* Minn.Stat. § 518.551, subd. 5(e) (1986) ("The above guidelines are binding in each case unless the court makes express findings of fact as to the reason for departure below or above the guidelines"). Under the circumstances, however, such a deviation is reasonable. First, because respondent's sole source of income at this time is the maintenance she receives from appellant, a child support award would effectively reduce the maintenance award to $640, an amount that is insufficient to meet respondent's needs. Second, the court did not deny support, but only reserved judgment. Accordingly, when respondent obtains gainful employment, appellant may petition the court for a support order based on respondent's income. Third, the minor child will be 18 years old in December 1988, and is already contributing to her own support through part-time employment. *See* Minn.Stat. § 518.551, subd. 5(b)(2) (1986)

(trial court shall consider the needs and resources of the child).

 4. Respondent claims error in the court's failure to secure the maintenance award by requiring that appellant name her as beneficiary on his life insurance policies. "[I]n the exceptional case the reasons which justify granting permanent alimony * * * also justify the securing of that alimony." *Arundel v. Arundel,* 281 N.W.2d 663, 667 (Minn.1979). Respondent has no secure employment, minimal marketable skills, and no income other than the maintenance award. In the event of appellant's death, respondent's situation warrants the security she requests. The trial court's determination on this issue is modified to require appellant to name respondent as beneficiary on his existing insurance policies.

5. Respondent further claims the court abused its discretion by refusing her request for additional attorney fees. The court's findings reflect that appellant has already paid $750 of respondent's attorney fees. Because appellant has assumed responsibility for all of the parties' substantial debts, his resources are not so significantly greater than respondent's as to find that the court's denial of attorney fees constitutes an abuse of discretion. *See Kirby v. Kirby,* 348 N.W.2d 392, 394 (Minn. Ct.App.1984).

Respondent also disputes the trial court's determination of several of the parties' expenses, debts, incomes, and tax attributes. Her primary contention is over the inclusion of expenses from appellant's hobby farm in the list of appellant's "reasonable" expenses. Respondent also states the court should have recognized that appellant's income history shows a greater income than that which the trial court found; should have included his anticipated income tax refund as income; and should have considered that appellant's father has not pressured appellant to repay the $2700 that appellant owes him.

Respondent's claims do not reveal any clearly erroneous trial court findings. In fact, the court considered appellant's anticipated income tax refund in distributing the parties' assets and liabilities. The trial court's determinations on this issue are affirmed.

## DECISION

The trial court properly decided issues of maintenance, child support, and attorney fees. The judgment is modified to relieve appellant of the debt owed to respondent's parents and to require respondent to pay that debt. The judgment is also modified to require appellant to name respondent as beneficiary on his existing life insurance policies, as security for the permanent maintenance award, which policies we have reviewed.

Affirmed as modified.